NOT FOR PUBLICATION (Doc. No. 61)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                        :
CHARLES STEWART,                        :
                                        :
        Plaintiff,                      :
                                        :
    v.                                  :
                                        :
GREYHOUND LINES, INC.,                  :   Civil No. 09-2977 (RBK/KMW)
JAMES A. PAULING,                       :
DOROTHY J. PATTERSON, as                :   **OPINION**
ADMINISTRATRIX of the Estate of         :
JOLENE DONELAN, deceased,               :
JOHN DOES 1-10 (names for fictitious    :
individuals) and ABC COMPANIES 1-10     :
(names for fictitious entities),        :
                                        :
        Defendants.                     :
_____:

**KUGLER**, United States District Judge:

      This matter comes before the Court on the unopposed motion of the Estate of Jolene Donelan ("Defendant") to enforce a settlement agreement allegedly entered into with Charles Stewart ("Plaintiff"). Because Defendant has shown that a settlement agreement was entered into between the parties, and that Plaintiff has not shown any compelling circumstances why the settlement should not be enforced, the Court grants Defendant's motion and Plaintiff is ordered to sign the agreement releasing his claim against Defendant. Defendant's request for costs and counsel fees is denied. Plaintiff's case against Defendant Estate of Jolene Donelan is dismissed.

**I.    BACKGROUND**

      On July 21, 2007 a vehicle operated by Jolene Donelan collided with a bus operated by Greyhound Lines, Inc. on the New Jersey Turnpike. Defendant's Certification in Support of

1

Settlement ("Def. Cert. Sttlmt.") at ¶ 2.  The collision claimed Donelan's life, and many bus passengers alleged personal injuries in the crash.  Id.  Federal and state lawsuits were filed against Defendants.  Defendant's Brief in Support of Notice of Motion to Enforce Settlement ("Def. Br. Sttlmt."), 1.  Limited insurance coverage was available to the plaintiffs from Defendant's automobile insurance policy, Donegal Mutual Insurance Company.  Id. at 2.  Accordingly, all of the settlements against the Estate of Jolene Donelan ("Defendant"), and most settlements against the Greyhound defendant, were eventually consolidated in federal court before Magistrate Judge Karen M. Williams.  Id. at 1-2.

At a settlement conference on November 10, 2010, Plaintiff had not yet made a settlement offer.  Def. Cert. Sttlmt., Ex. B (Letter from William J. Kohler, Esq. (attorney for Defendant) to All Counsel (Dec. 7, 2010)).  As a result, Defendant was not able to generate proposed settlement figures for the claims of each plaintiff.  Id.  Plaintiff then provided a settlement offer in the amount of $20,000.00, but, unlike the other plaintiffs, indicated that he would preserve his right to continue his claim against the Greyhound defendant.  Id.  Because Greyhound's participation in the global settlement was contingent upon all plaintiffs' relinquishing their legal claims against Greyhound, that defendant "was no longer interested in making any settlement offers," resulting in new, decreased settlement figures for all plaintiffs. Id.  In his letter, counsel for Defendant indicated that, "in order for these proposed settlement figures to be bona fide offers, there must be unanimous agreement amongst all claimants to accept these proposed offers."  Id.  Counsel further cautioned that, "due to the limited coverage available to [his] client," he could not "under any circumstances agree to settlements with anything less than all claimants."  Id.  That letter listed the proposed settlements with each plaintiff, including $18,000.00 for Plaintiff Stewart.  Id.

2

It appears that Plaintiff further negotiated to receive the full $20,000.00 from Defendant that he had initially proposed, contingent upon receipt of an "Affidavit of No Other Insurance" by Defendant, and Plaintiff also preserved his right to pursue further action against Greyhound. Id.; Def. Br. Sttlmt., 2-3. The agreement as to the $20,000.00 sum, "the entirety of which [would] be paid by Donegal Mutual Insurance Company" on behalf of Jolene M. Donelan and Estate of Jolene M. Donelan, was memorialized by counsel for Defendant in a letter dated December 20, 2010. Def. Cert. Sttlmt., Ex. C (Letter from Kohler to Kenneth Cohen, Esq. (attorney for Plaintiff) (Dec. 20, 2010)). Although the affidavit itself is not appended to Defendant's motion, defense counsel has certified that, under cover of letter dated April 4, 2011 (Def. Cert. Sttlmt, Ex. D), Defendant's Affidavit of No Other Insurance was sent to Plaintiff Stewart. At that time, defense counsel indicated, "[t]he only remaining contingency to [the] disbursement of the settlement checks" was that counsel awaited the signed Releases of two plaintiffs. Def. Cert. Sttlmt, Ex. D (Apr. 4, 2011 Letter).

On April 26, 2011 and May 4, 2011, settlement checks were disbursed by Defendant to plaintiffs. Def. Cert. Sttlmt, Ex. E. The Court has not received the record of the disbursement of such check to Plaintiff. See E-mail from William J. Kohler, Esq. to Kenneth Cohen, Esq. (May 24, 2011) (defense counsel still awaiting Plaintiff's signed closing papers). On May 25, 2011, Plaintiff's counsel indicated via e-mail that Plaintiff had written to his attorney, "advising [him] that he ha[d] reconsidered and [would] not accept the settlement." E-mail from Cohen to Kohler (May 25, 2011). The next day, counsel for Defendant sent a letter to Plaintiff's attorney, confirming their e-mail and telephone correspondence establishing "that Charles Stewart had 'reconsidered' and [would] not agree to consummate the settlement of his claim against defendant, Estate of Jolene M. Donelan." Def. Cert. Sttlmt, Ex. F (Letter from Kohler to Cohen

3

(May 26, 2011)). Defendant's attorney further explained that, "if Mr. Stewart [would] not agree to abide by the terms of the agreed-upon settlement, including signing a Release and authorizing the filing of a Stipulation of Dismissal," Defendant would seek a motion to enforce the settlement. On June 14, 2011, Defendant filed the instant motion in this Court, which Plaintiff has not opposed.

## II. STANDARD

### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law. See Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). Here, we apply the substantive law of New Jersey.[1]

### B. Contract Formation

The May 24-26, 2011 correspondence between attorneys for Defendant and Plaintiff indicates that Plaintiff never signed the closing papers for the settlement agreement. Accordingly, before deciding whether the settlement agreement may be enforced against Plaintiff, the Court must determine whether or not Plaintiff and Defendant actually entered into an agreement. Under New Jersey law, the basic elements of a valid contract are: (1) an offer by

---

[1] No conflict of laws problem has been presented to this Court; Defendant rightly assumes that New Jersey law applies. Federal courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." Garcia v. Plaza Oldsmobile LTD., 421 F.3d 216, 219 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). New Jersey follows the Restatement (Second) of the Conflict of Laws, which indicates that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." § 188(1). Because the motor vehicle accident underlying this matter took place in New Jersey, the settlement at issue in this case was negotiated and purportedly agreed upon in the District of New Jersey, and no other state's policy has been implicated as having an interest in the outcome of this matter, it is clear that the Section 6 factors (which include the policies of interested states; the protection of justified expectations; and certainty, predictability and uniformity of result) weigh heavily in favor of application of the substantive law of New Jersey in this case.

the promisor to act or forebear in some way; (2) acceptance by the promisee of the promisor's offer; and (3) fair consideration paid by the promisee in exchange for the promisor's performance.  See Am. Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12, 17 (1954) (discussing contract formation under New Jersey law).  In this case, Defendant contends that it promised to pay Plaintiff a sum of $20,000.00, and Plaintiff promised to relinquish any further claim against this Defendant.  Thus the first element of contract formation is fulfilled.  However, the elements of acceptance and consideration are brought into question in this case, since Defendant has produced no agreement signed by Plaintiff, and since Defendant does not appear to have tendered the allegedly agreed-upon sum of $20,000.00 to the Plaintiff.

Therefore, a question exists as to whether Defendant's settlement offer ever grew into an enforceable agreement.  The Court finds that a promissory estoppel analysis is appropriate in this case, despite the fact that Defendant has not articulated its claim under such a contract theory.  Under New Jersey law, a promissory estoppel claim includes four elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment."  Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 944 A.2d 1, 19 (N.J. 2008).  In Pop's Cones, Inc. v. Resorts International Hotel, Inc., the New Jersey Appellate Division noted that New Jersey courts increasingly "relax the strict adherence" to a heightened standard of proof for the "clear and definite promise" element of a promissory estoppel claim.  307 N.J. Super. 461, 469 (App. Div. 1998) (cited in Harkes v. Accessory Corp., 2010 U.S. Dist. LEXIS 21748 at *13 (D.N.J. Mar. 10, 2010)).  Moreover, the Pop's Cones Court cited Section 90 of the Restatement (Second) of Contracts for the proposition that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does

5

induce such action or forbearance is binding <u>if injustice can be avoided only by enforcement of the promise</u>." <u>Pop's Cones, Inc.</u>, 307 N.J. Super. at 470 (citing <u>Rest. (Second) of Contracts</u>, § 90). The commentary to Section 90 explains that "[t]his Section is often referred to in terms of 'promissory estoppel.'" <u>Rest. (Second) Contracts</u>, § 90, cmt.a.

Furthermore, under New Jersey law, "an abandonment of a contract can only take place by the consent of both parties, and requires as clear evidence of the waiver as of the existence of the contract." <u>Wheaton v. Collins</u>, 84 A. 271, 273 (Ch.1912) (internal citation omitted). Accordingly, "[a]s with the formation of a contract, a proposal to terminate the contract by one party must actually be accepted by the other in order to constitute an abandonment." <u>County of Morris v. Fauver</u>, 153 N.J. 80, 96 (1998).

**C. Settlement Enforcement**

As indicated in Section II.A <u>supra</u>, the construction and enforcement of a settlement agreement in federal court are governed by state law. <u>Excelsior Ins. Co. v. Pennsbury Pain Ctr.</u>, 975 F. Supp. 342, 348 (D.N.J. 1996). Under New Jersey law, a settlement agreement between two parties is a binding legal contract. <u>Nolan by Nolan v. Lee Ho</u>, 120 N.J. 465 (1990) (internal citations omitted). Generally, New Jersey courts honor settlement agreements "absent a demonstration of fraud or other compelling circumstances." <u>Id.</u> at 472 (internal quotations omitted). Moreover, "if a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." <u>Jennings v. Reed</u>, 381 N.J. Super. 217, 227 (App. Div. 2005) (internal quotations omitted). Also, a party may seek to rescind a settlement agreement due to duress. <u>Wolf v. Marlton Corp.</u>, 57 N.J. Super. 278 (App. Div. 1959). However, "[b]efore vacating a settlement agreement, [New Jersey] courts require clear and

6

convincing proof that the agreement should be vacated." Lee Ho, 577 A.2d at 146 (internal quotations omitted).

### III. DISCUSSION

**A. The Doctrine of Promissory Estoppel Establishes the Existence of a Binding Agreement**

In this case, although Plaintiff did not manifest his acceptance of Defendant's offer by signing the agreement, Defendant has presented ample evidence that Plaintiff participated in settlement negotiations, and that an agreement was reached in accordance with the promissory estoppel principles of Section 90. First, Defendant was induced by its communications with Plaintiff to believe that Plaintiff had promised to abide by an agreed-upon settlement. See, e.g., Def. Br. Sttlmt., Ex. C (Letter from Kohler to Cohen (Dec. 20, 2010) ("Please allow this letter to confirm the recent settlement of the claim of plaintiff Charles Stewart . . . ."). Second, it is clear that action on Defendant's part was induced by Plaintiff's promise; indeed, because the settlements of all plaintiffs were contingent upon each other, Defendant renegotiated each plaintiff's agreement because of Plaintiff's demands, and eventually disbursed checks to the other plaintiffs in reliance on Plaintiff Stewart's agreement. Def. Br. Sttlemt., Exs. B and E.

These facts inform not only the analysis of whether or not Plaintiff and Defendant made promises to each other, but are also dispositive of the other three promissory estoppel factors as well. Plaintiff's promise could not have been made without the expectation that Defendant would rely on it, since it was evident that all plaintiffs' settlements depended on Plaintiff Stewart's acquiescence to such an agreement. Moreover, it was reasonable for Defendant to rely on Plaintiff's promise, and the detriment that would befall Defendant in the absence of Plaintiff's adherence to his agreement (namely, the collapse of Defendant's entire global settlement) is "definite and substantial." Toll Bros., Inc., 194 N.J. 223, 944 A.2d at 19.

Plaintiff has presented no evidence to suggest an agreement with Defendant was not formed, or to otherwise rebut these findings.  Furthermore, as explained above, the doctrine of abandonment requires that both parties consent to the waiver of the contract.  In this case, Defendant clearly did not consent to abandoning the contract; accordingly, the agreement cannot be said to have been abandoned.

### B. Defendant's Settlement with Plaintiff Should Be Enforced

As indicated in Section III.A, Defendant has shown the existence of a valid settlement agreement with Plaintiff.  Plaintiff has not offered any evidence—let alone "clear and convincing proof"—that this Court should vacate the settlement.  Accordingly, this Court must enforce the valid settlement agreement between Plaintiff and Defendant.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to enforce the settlement agreement with Plaintiff is **GRANTED** and Plaintiff is ordered to sign and promptly deliver to Defendant the agreement releasing his claim against this Defendant, in order to facilitate Defendant's payment of the agreed-upon settlement award.  Defendant's motion for costs and fees is **DENIED**.  Plaintiff's case against Defendant is **DISMISSED**.

Dated: 1/4/2012                                                              /s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge