NOT FOR PUBLICATION (Doc. No. 65)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

| | |
|---|---|
| CHARLES STEWART, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| GREYHOUND LINES, INC., : | Civil No. 09-2977 (RBK/KMW) |
| JAMES A. PAULING, : | |
| DOROTHY J. PATTERSON, as : | **OPINION** |
| ADMINISTRATRIX of the Estate of : | |
| JOLENE DONELAN, deceased, : | |
| JOHN DOES 1-10 (names for fictitious : | |
| individuals) and ABC COMPANIES 1-10 : | |
| (names for fictitious entities), : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Greyhound Lines, Inc. and James A. Pauling ("Defendants") for summary judgment as to the tort claim of Charles Stewart ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 56. Because the Court finds that Plaintiff has raised a genuine issue of material fact as to the existence of a permanent injury, Defendants' motion is denied.

**I.   BACKGROUND**[1]

On July 21, 2007, a car driven by Jolene Donelan collided with a Greyhound bus on the northbound New Jersey Turnpike. Defendants' Brief in Support of Summary Judgment (Defs.

---

[1] The Court notes that Defendants, the movants in this case, have failed to file a Statement of Material Facts Not in Dispute, pursuant to New Jersey Local Rule 56.1(a). Although this failure constitute grounds on which to deny Defendants' motion, the Court will consider the merits of the motion in this case, and elects only to admonish Defendants to adhere to the Local Rules that govern this Court.

Br. S.J.), 2.[2] Plaintiff, a passenger on the Greyhound bus, allegedly sustained neck and back injuries in the collision. Seeking to recover for those injuries, Plaintiff brought this lawsuit against Defendant James Pauling, the driver of the Greyhound bus, and Defendant Greyhound Lines, Inc.[3]

Specifically, Plaintiff alleges that he suffers "significant restriction of range of motion in his cervical and lumbar spine, persistent disc bulges at C3-C4, C6-C7, C7-T, and L3-L4, and . . . bilateral facial muscle spasm and traumatic arthropathy of the temporomandibular joint . . . ." Certification of Plaintiff's Counsel in Opposition to Defendants' Summary Judgment Motion ("Pl. Cert.") at ¶ 16.[4] Plaintiff and Defendants have submitted numerous medical reports to establish the nature and extent of Plaintiff's alleged injuries. A medical examination taken two months after the collision underlying this case showed degenerative changes in Plaintiff's cervical, thoracic, and lumbar spine. Defendants' Brief in Support of Summary Judgment ("Defs. Br. S.J."), Ex. D (X-Ray report by Steven Reichard, D.O.; Sept. 18, 2007). About eight months later, Plaintiff was diagnosed with traumatic cervical pain syndrome and traumatic lumbosacral pain syndrome. Id., Ex. E (Consultation report by Adam C. Carter, M.D.; Apr. 3, 2008). As recommended by Dr. Carter in the April 3, 2008 exam, Plaintiff underwent magnetic resonance imaging ("MRI") testing of the lumbar spine one month later, which revealed a disc bulge without significant spinal canal stenosis at L4-L5, and "[m]ild disc disease of the lumbar

---

[2] The pages of Defendants' Brief are not numbered; accordingly, the page numbers referenced in this Opinion correspond to the page designation of the electronic filing system.

[3] Jolene Donelan died as a result of the car crash, and Charles Stewart and others brought claims against her Estate. Those claims were settled in this Court by a global settlement agreement. This Court entered an Order enforcing that settlement as to Plaintiff Stewart on January 4, 2012.

[4] Contrary to District of New Jersey Local Rule 7.2(a), Plaintiff's Certification contains numerous statements of fact that are necessarily outside of the personal knowledge of the affiant, Plaintiff's counsel. The Court makes reference to those statements only where it finds they are supported elsewhere in the record. The Certification by Plaintiff's counsel also contravenes Local Rule 7.2(a) because several paragraphs contained therein include legal argument. In accordance with the Local Rule, the legal arguments will be disregarded by the Court. D.N.J. Local Rule 7.2(a). Though the Local Rules provide for sanctions in such circumstances, the Court will only admonish Plaintiff for this improper argument.

spine without evidence of significant spinal canal stenosis or neural foraminal narrowing." Id., Ex. F (MRI report of Anand E. Kakkanatt, M.D.; May 15, 2008). A subsequent MRI of the lumbosacral spine in October of 2008 showed change due to desiccation in the L3-L4 region, and mild bulging without herniation or spinal canal stenosis. Id., Ex. G (MRI report of Steven Reichert, D.O.; Oct. 13, 2008). As in the May 2008 exam, mild bulging was also noted at L4-L5. Id. On September 15, 2009, an MRI of the cervical spine showed "[m]ultilevel disc disease and degenerative changes" including narrowing of the neural foramen, and an MRI of the lumbar spine revealed "[m]ultilevel disc disease which is unchanged." Id., Ex. H and I (MRI reports; Sept. 14-15, 2009).

In an examination in September 2008, a physician causally linked Plaintiff's injuries to his bus accident.[5] Plaintiff's Brief in Opposite to Summary Judgment ("Pl. Br. Opp."), Ex. E (Examination report of Douglas C. Schottenstein, M.D.; Sept. 17, 2008) ("I feel that there is a direct causal relationship between the accident described and the patient's current injuries."). Moreover, an examination submitted to Plaintiff's counsel on March 29, 2011 noted that Plaintiff's "subjective complaints, objective findings, and resultant functional limitations are causally related to the motor vehicle accident of 7/31/07[6] . . . ." Id., Ex. C (Examination report of Andrew D. Brown, M.D.; Mar. 29, 2011).

Finally, in addition to treatment for neck and back pain, Plaintiff consulted a neuromuscular dentistry specialist for jaw and other pain in 2009. This examination revealed, among other things, dentofacial abnormalities such as pain, muscle spasm, otalgia, whiplash, and

---

[5] Dr. Schottenstein dates the bus accident as July 21, 2008, rather than 2007. However, the record reveals no motor vehicle accident after the one on July 21, 2007, and no other bus accidents at all, and Defendants do not refer to any 2008 accidents from which Plaintiff's alleged injuries might have arisen.

[6] The motor vehicle accident underlying this case took place on July 21, 2007, not July 31. As with Dr. Schottenstein's report, however, the record reveals no motor vehicle accident after the one on July 21, 2007, and Defendants do not refer to any later accidents from which Plaintiff's alleged injuries might have arisen.

traumatic arthropathy of the temporomandibular joint.  Def. Br. S.J., Ex. J (Examination report of Joseph M. Gulak, D.D.S.; Apr. 6, 2009).  Moreover, Dr. Gulak indicated that "[i]n [his] opinion, to a reasonable degree of medical/dental certainty, this disorder resulted from the accident of 07/21/2007."  Id.  Dr. Gulak echoed these conditions and their relationship to the July 21, 2007 bus collision in another examination report on April 4, 2011.  Pl. Br. Opp., Ex. I (Examination report of Joseph M. Gulak, D.D.S.; Apr. 4, 2011)

## II.  STANDARD

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply New Jersey state substantive law and federal procedural law.  Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'— that is, pointing out to the

4

district court—that there is an absence of evidence to support the nonmoving party's case."
Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   DISCUSSION

Under New Jersey's Automobile Insurance Cost Reduction Act ("AICRA"), a party subject to the limitation on lawsuit option is prohibited from suing for noneconomic damages[7] unless the party sustained an injury resulting in 1) death, 2) dismemberment, 3) significant disfigurement or significant scarring, 4) displaced fractures, 5) loss of a fetus, or 6) a permanent

---

[7] Defined as "pain, suffering and inconvenience." N.J. Stat. Ann. § 39:6A-2(i).

injury "within a reasonable degree of medical probability." N.J. Stat. Ann. § 39:6A-8(a). The purpose of the limitation is to prevent suits based on injures that are not serious or permanent. Libby v. Conner, No. 06-2903, 2007 U.S. Dist. LEXIS 80507, 2007 WL 3232585, at *4 (D.N.J. Oct. 31, 2007) (citing N.J. Stat. Ann. § 39:6A-1.1(b); Serrano v. Serrano, 183 N.J. 508, 516, 874 A.2d 1058 (2005)).

As is relevant to the instant case, an injury is permanent when "the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." § 39:6A-8(a). To satisfy the injury requirement, a plaintiff must provide the defendant with a certification from a physician stating that the plaintiff has sustained a listed injury. Id.; Davidson v. Slater, 189 N.J. 166, 914 A.2d 282, 291 (N.J. 2007). The certification must be "based on and refer to objective clinical evidence, which may include medical testing . . . ." § 39:6A-8(a). The objective clinical evidence must be derived from accepted diagnostic tests and cannot be "'dependent entirely upon subjective patient response.'" Davidson, 914 A.2d at 291 (quoting § 39:6A-8(a)). Accepted diagnostic tests are listed in the New Jersey Administrative Code. See N.J. Stat. Ann. § 39:6A-4.7; N.J. Admin. Code § 11:3-4.5. If a certification does not rely on objective medical evidence, a reviewing court may grant summary judgment for the defendant. Libby, 2007 U.S. Dist. LEXIS 80507, 2007 WL 3232585, at *5.

The New Jersey legislature and New Jersey state courts have determined that MRI scans are acceptable diagnostic testing for the purposes of establishing that a plaintiff has met the verbal threshold. N.J.A.C. § 11:3-4.5; see also Davidson v. Slater, 189 N.J. 166, 914 A.2d 282, 291 (2007) (referring to the list contained in N.J.A.C. § 11:3-4.5 as accepted diagnostic tests). Plaintiff has submitted several MRI reports in support of his claim that he has suffered a

permanent injury to his neck and back within in the meaning of AICRA.  Moreover, as indicated in Section I above, Plaintiff has submitted several reports that causally link his alleged neck, back, and jaw-related injuries to the July 21, 2007 collision.

Disc-related injuries have been held sufficient to satisfy AICRA's permanent injury requirement.  For example, in Pardo v. Dominguez, the New Jersey Appellate Division held that a finding of a herniated disc is sufficient to meet the "permanent injury" requirement of the verbal threshold.  382 N.J. Super. 489 (App. Div. 2006).  However, in the instant case, although the medical evidence reveals disc bulging in the cervical and lumbar regions, as well as some disc degeneration in those areas, Plaintiff has presented no evidence of disc herniation.  See Section I supra.  In finding that "the existence of a herniated disc was sufficient to satisfy the verbal threshold," the Pardo Court determined that, at that time, it "need not address whether a disc bulge would have the same effect."  Pardo, 382 N.J. Super. at 494.

Defendants argue that disc bulging does not establish a permanent injury, offering the case of James v. Torres to support their contention.  354 N.J. Super. 586 (App. Div. 2002).  However, James is insufficient to establish the absence of a genuine issue of material fact concerning the permanency of Plaintiff's alleged injury for the purposes of AICRA's verbal threshold.  In that case, the New Jersey Appellate Division denied the plaintiff's claim for disc bulging because the plaintiff had not met the requirement of demonstrating that her injury produced a serious impact on her life.  Id. at 596.  However, plaintiffs in New Jersey no longer need to demonstrate serious impact when seeking to recover noneconomic damages under AICRA for permanent injury.  See Myers v. Garrett, 2006 N.J. Super. Unpub. LEXIS 1922 (App. Div. Oct. 25, 2006) ("On June 14, 2005, the Court decided DiProspero, supra, and Serrano, supra, definitively holding in both cases that the 1999 amendments to AICRA do not

require proof of the Oswin second prong [that the injury had an impact on plaintiff's life] in order to recover non-economic damages. . . . The DiProspero and Serrano decisions overruled our November 2002 decision in James v. Torres . . . where we held that the 1999 amendments to AICRA did not eliminate Oswin's second prong.") (internal citations omitted).  Accordingly, James is inapposite.

Because Defendants have failed to show that Plaintiff's alleged injuries, which are supported by credible medical evidence, are insufficient to constitute a permanent injury, Plaintiff has raised a genuine issue of material fact as to whether or not his disc bulging and disc degeneration, along with his jaw pain, amount to permanent injury for the purposes of claiming noneconomic damages under AICRA.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.  An accompanying order shall issue today.


Dated: 1/4/2012                                             /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge